```
           IN THE UNITED STATES DISTRICT COURT
              THE MIDDLE DISTRICT OF GEORGIA
                    COLUMBUS DIVISION
```

CARLTON GARY,                           *

       Petitioner,                 *

vs.                                     *

                                                 CASE NO. 4:97-CV-181(CDL)

WILLIAM TERRY, Warden,[1]              *

       Respondent.                *

## **O R D E R**

Petitioner has filed a "Motion for Discovery Procedures Regarding Bite Mark Impression and for Funds for Expert Evaluation of the Bite Mark Impression." For the reasons discussed below, this motion is granted.

### I. RELEVANT BACKGROUND

On April 19, 1978, sixty-one year old Janet Cofer's body was found lying in her bed covered with linen and with a pillow over her face. (Resp't Ex. 54, at 3179, 3200, 3206.) Mrs. Cofer had been raped and strangled with a stocking. (Resp't Ex. 54, at 3218-19). Mrs. Cofer was believed to be one of the victims of the so-called "Columbus Stocking Strangler."

At Petitioner's trial, the State introduced evidence regarding the strangulation death of Mrs. Cofer as a similar transaction, allegedly tending to prove Petitioner's guilt with regard to the three murders charged in the indictment. (Resp't Ex. 54, at 3215-36). Petitioner was found guilty and received the death penalty for the

---

[1] William Terry is now the Warden of the Georgia Diagnostic and Classification Center.

three rapes and murders shown in the indictment.[2]  The evidence relating to Mrs. Cofer was introduced by the State solely to show similar mode, method, and motivation.

It was not disclosed to the defense, either prior to trial or at trial, that an impression or cast had been made of a bite mark on Mrs. Cofer's left breast. Dr. Weber testified that during the autopsy he observed "what appeared to be tooth marks" on Mrs. Cofer's breast and he consulted "odontology experts." (Resp't Ex. 54, at 3215-17). Moreover, Dr. Weber testified that the experts determined that any comparison between the bite mark and Petitioner would not be valid because Petitioner had dental work between the time of Mrs. Cofer's murder and the time of his arrest. (Resp't Ex. 54, at 3234-35). Dr. Weber never mentioned the existence of a bite mark impression.

During the state habeas corpus proceedings, Petitioner first learned that a dentist from the Columbus area, Dr. Carlos Galbreath, had made a cast or impression of the bite mark on Mrs. Cofer's breast. (R. at 106.) Petitioner also learned that prior to his trial, the prosecutors consulted with Dr. Thomas J. David, a forensic odontologist, regarding the cast. (David Aff. May 9, 1994, ¶ 5.) Petitioner's counsel at the time interviewed Dr. Galbreath and Dr. David. (Ertel Decl. July 30, 2003, ¶ 4; Ertel Supplemental Decl. Feb. 10, 2004.)

At Petitioner's state habeas corpus hearing, Petitioner's attorneys questioned both of the prosecutors from Petitioner's trial regarding the whereabouts of the bite mark impression.  One of the

---

[2] Petitioner was charged with and convicted of raping and murdering three elderly women who resided in Columbus, Georgia: Kathleen Woodruff; Florence Scheible; and Martha Thurmond.

prosecutors, Judge William Smith, testified that after they consulted Dr. Thomas J. David, the bite mark impression was given back to Dr. Galbreath. (Resp. Ex. 245, at 282.) Judge Smith stated that Dr. Galbreath still had the impression, "as far as [he] knew." (*Id.*)

Doug Pullen, the second prosecutor, testified that he was with the group who transported the bite mark impression to Dr. David's office, and he had no idea what happened to the bite mark impression afterwards. (Resp. Ex. 143, at 39-41.) Petitioner was not able to locate the bite mark impression while his state habeas corpus action was pending.

While his federal habeas corpus action was pending in this Court, Petitioner learned that the bite mark impression might still be in existence. On October 28, 2003, Petitioner filed a Motion to Secure Custody of Critical Evidence. (R. at 106.) In response to this motion, the Court held a hearing on November 10, 2003, and authorized the issuance of subpoenas to several individuals who might know of the existence and/or location of the bite mark impression. (Nov. 10, 2003 Transcript.) The subpoenas were served and the Court held hearings regarding the existence and location of the bite mark impression on November 25, 2003 and December 22, 2003. (Nov. 25 and Dec. 22, 2003 Transcripts.) At both of these hearings, all of the witnesses testified that they did not know where the bite mark impression might be located. (Nov. 25, 2003 Transcript, at 6, 18-19, 23-24, 27, 31; Dec. 22, 2003 Transcript, p. 5, 7-8.)

The bite mark impression was not located during the pendency of this case in the District Court, and on September 28, 2005 the Court entered an Order Denying Petitioner's Application for Writ of Habeas Corpus. (R. at 127.) Petitioner filed a Notice of Appeal, and this

Court granted a Certificate of Appealability as to certain issues, including issues regarding the bite mark impression made of the bite mark found on the left breast of Mrs. Janet Cofer.  (R. at 129, 139.)

On November 9, 2005, counsel for Petitioner received a telephone call from counsel for Respondent indicating that the Muscogee County Coroner, James Dunnavant, had recently located the bite mark impression.  (Ex. D. attached to Petitioner's Motion for Discovery Procedures Regarding Bite Mark Impression and for Funds for Expert Evaluation of the Bite Mark Impression.)  In light of this development, Petitioner moved the Eleventh Circuit Court of Appeals to remand the case to this Court for further proceedings regarding the bite mark impression.  On November 23, 2005, the Eleventh Circuit granted Petitioner's Motion to Remand.  (R. at 154.)

## II.  DISCUSSION

In his Motion for Discovery Procedures Regarding Bite Mark Impression and for Funds for Expert Evaluation of the Bite Mark Impression, Petitioner requests that he be permitted to take the deposition of Muscogee County Coroner James Dunnavant, and that Mr. Dunnavant be required to produce the bite mark impression at the deposition so that it may be evaluated by Dr. Thomas J. David (who presumably would be in attendance at the deposition).  Upon viewing the bite mark impression, Petitioner maintains that Dr. David will be able to determine if it is still a useful impression.  If Dr. David determines it is a useful impression, Petitioner requests that Dr. David be allowed to make an exemplar of the impression (described as "essentially a negative impression of the bite mark cast") for

comparison purposes.  Petitioner also requests funds, not to exceed $1,500.00, to pay for the services of Dr. David.[3]

When determining whether to allow discovery in a federal habeas corpus action, there are several rules and statutes that the Court must consider.  First, Rule 6 of the Rules Governing § 2254 Cases (hereinafter "Rule 6") provides that "[a] party shall be entitled to invoke the processes of discovery available under the Federal Rules of Civil Procedure if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise."

Next, Federal Rule of Civil Procedure 30, along with Rule 6, allows the taking of depositions in a habeas corpus action.  Also, Federal Rules of Civil Procedure 34(c) and 45, along with Rule 6, provide a procedure for Mr. Dunnavant to be required to produce the bite mark cast in the office of Dr. David so that an exemplar may be made.

Finally, to the extent that Petitioner is seeking financial assistance for an expert (Dr. David), his request is governed by 21 U.S.C. § 848 (q)(9), which provides as follows:

> Upon a finding that investigative, expert, or other services are reasonably necessary for the representation of the defendant, whether in connection with issues relating to guilt or the sentence, the court may authorize the defendant's attorneys to obtain such services on behalf of the defendant and, if so authorized, shall order the payment of fees and expenses therefor under paragraph (10).

*Id.*

---

[3]Petitioner's current motion deals only with these specific requests. Moreover, this Order grants only these specific discovery requests. Petitioner states that if these steps can be successfully completed, he may need to request additional discovery in the future.  The Court will address future discovery requests if, and when, Petitioner files such motion(s).

As these various rules and statutes provide a means of accomplishing the discovery Petitioner seeks, the issue is whether he is entitled to such discovery and funds.

Since the enactment of the Antiterrorism and Effective Death Penalty Act (hereinafter "AEDPA"), the first question a court must ask before allowing discovery is if the requesting party was reasonably diligent in his pursuit of the discovery at the state level.  In two post-AEDPA cases, the Eleventh Circuit explained that if a habeas petitioner has not been reasonably diligent in developing the factual basis for a claim while in state court, he will not be allowed to do so in federal court unless he can meet the narrow exceptions provided in 28 U.S.C. 2254 (e)(2).[4]   *Isaacs v. Head*, 300 F.3d 1232, 1248-49 (11th Cir. 2002) and *Crawford v. Head*, 311 F.3d 1288, 1329 (11th Cir. 2002).  Moreover the Eleventh Circuit explained that "reasonably diligent" meant that "'the prisoner made a reasonable attempt, in light of information available at the time, to investigate and pursue claims in state court.'"  *Isaacs*, 300 F.3d at 1248-49 (quoting *Williams v. Taylor*, 529 U.S. 420, 435 (2000)).

---

[4] 28 U.S.C. § 2254 (e)(2) provides as follows:
    If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that-
(A) the claim relies on-
    (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
    (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

6

Respondent maintains that Petitioner should not be allowed to conduct discovery because he was not reasonably diligent at the state level locating the bite mark impression. To support this theory, Respondent points to this Court's April 2, 2004 Order, in which it denied Petitioner's Motion for Evidentiary Hearing Regarding the State's Conduct in Preventing the Petitioner Access to the Bite Mark Evidence. (R. at 125.) In this Order, the Court held that "Petitioner has not shown that he was reasonably diligent during the state court proceedings in developing the factual basis for his claim that the State failed to preserve potentially exculpatory evidence." (R. at 125, p. 10.) However, this Court has never found that Petitioner lacked diligence in his pursuit of the bite mark cast itself. In fact, the Court held three previous hearings in an attempt to determine if the bite mark impression still existed and, if so, where it was located. (Nov. 10, 2003, Nov. 25, 2003, and Dec. 22, 2003 Transcripts). Had the Court found that Petitioner was not diligent at the state level in his attempts to locate the bite mark cast, it would not have held the previous hearings. The Court's finding that Petitioner was not diligent in his development of facts to support his claim that the State intentionally destroyed the bite mark impression, is not the equivalent of finding that Petitioner was not diligent in his attempts to find the bite mark impression itself.[5]

To the contrary, it appears Petitioner made a reasonable attempt

---

[5] The Court explained exactly this in its April 2, 2004 Order when it stated that "a finding that the state habeas counsel may have been diligent in attempting to *locate* the bite mark evidence is not equivalent to finding that counsel was diligent in *developing the facts to support his claim* that the State intentionally destroyed the bite mark cast." (R. at 125, p. 11 n.3.)

to locate the bite mark impression while his case was pending at the state habeas corpus level. His attorneys requested any bite mark impression during the state habeas proceeding and questioned both of the prosecutors from the trial regarding the existence and location of the bite mark impression. (Resp. Ex. 245, at 282; Resp. Ex. 143, at 39-41.) Petitioner's state habeas counsel undertook to interview the State's forensic odontologist and a dentist to recover the cast. The dentist (Dr. Galbreath) told Petitioner's attorney that the cast had been misplaced or destroyed. (Ertel Decl., July 30, 2003, ¶ 4; Ertel Supplemental Decl., Feb. 10, 2004). Apparently it has now been found. In light of his counsels' efforts at the state habeas level, it does not appear that AEDPA would bar discovery and the Court must look at pre-AEDPA law to determine if discovery is warranted.

The Supreme Court has explained that Rule 6(a) is meant to be consistent with *Harris v. Nelson*, 394 U.S. 286 (1969). *Bracy v. Gramley*, 520 U.S. 899, 909 (1997); *See also* Rule 6 Advisory Committee's Notes. Therefore, a petitioner has established "good cause" for discovery if "specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is entitled to relief." *Harris*, 394 U.S. at 299.

In this case, the bite mark impression is relevant to Petitioner's ground nine suppression of exculpatory evidence. The State has a duty of disclosure under *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny. In order to obtain relief under *Brady*, a petitioner must show that the prosecution withheld evidence, that the withheld evidence was exculpatory or impeaching, and material so as to establish prejudice. *Stephens v. Hall*, 407 F.3d 1195, 1203 (11th Cir.

2005). The bite mark cast was withheld, and it may, or may not, be exculpatory, material evidence. It appears the only way to find out is through discovery.

The bite mark cast could also be relevant to Petitioner's ground eight—the trial court's erroneous denial of funds for an adequate defense. Specifically, Petitioner claims that his due process and equal protection rights were denied by the refusal of the trial court to provide funds for a forensic odontologist. Petitioner has always maintained that had the State disclosed the bite mark impression and had he been afforded his own forensic odontologist, he could have established that he did not make the bite mark. The State's theory was that one person committed all of the murders. Therefore, according to the Petitioner, undermining the State's evidence of the bite mark on Janet Cofer would have resulted in undermining the State's whole case. Again, it appears that discovery regarding the bite mark impression is necessary to establish this claim.

In relation to Petitioner's request for funds for Dr. Thomas J. David, a habeas petitioner requesting funds to pay for an expert simply has to show that the proposed expert is reasonably necessary. *See Rojem v. Gibson*, 245 F.3d 1130, 1139 (10th Cir. 2001); see also Randy Hertz, James S. Liebman, *Federal Habeas Corpus Practice and Procedure* § 19.3 (4th ed. 2001)(explaining that the language in § 848 "suggest[s] that Congress intended to provide prisoners, upon request, with all resources needed to discover, plead, develop, and present evidence determinative of their 'colorable' constitutional claims"). Petitioner has shown that the assistance of Dr. Thomas J. David is reasonably necessary. Therefore, the Court, pursuant to 21 U.S.C.

§ 848 (q)(9), authorizes Petitioner to obtain his services to the extent described in Petitioner's motion.

### III. CONCLUSION

For the foregoing reasons, Petitioner's Motion for Discovery Procedures Regarding Bite Mark Impression and for Funds for Expert Evaluation of the Bite Mark Impression (Doc. 153) is GRANTED.[6]

IT IS SO ORDERED, this 23rd day of December, 2005.

                                                S/Clay D. Land
                                                    CLAY D. LAND
                                      UNITED STATES DISTRICT JUDGE

---

[6] Petitioner should complete and submit a CJA-31 form to obtain payment, not to exceed $1,500.00, for the expert services of Dr. Thomas J. David.