IN THE UNITED STATES DISTRICT COURT
THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

CARLTON GARY,                          *

    Petitioner,                   *

v.                                     *
                                    CASE NO. 4:97-CV-181 (CDL)
DERRICK SCHOFIELD, Warden,             *

    Respondent.                   *

## O R D E R

This case is back before this Court on remand from the United States Court of Appeals for the Eleventh Circuit. While this case was pending on appeal, the parties discovered the existence of a bite mark exemplar that was made in connection with the investigation of the criminal charges against Petitioner prior to his trial in state court. The Court of Appeals remanded the case to allow the parties to create an accurate and complete record regarding the recently located bite mark exemplar. Upon remand, this Court authorized limited discovery and held an evidentiary hearing. The Court now makes the following findings regarding the bite mark exemplar and reaffirms its previous decision denying Petitioner's Petition for a Writ of Habeas Corpus.

## I.   RELEVANT HISTORY

Petitioner seeks a writ of habeas corpus relating to his state court convictions for raping and murdering three elderly women. The recently discovered bite mark exemplar was made from teeth marks left on the breast of another victim, Janet Cofer. Petitioner was not charged with the rape or murder of Mrs. Cofer, a sixty-one year old female whose body was found on April 20, 1978, lying in her bed

covered with linen and with a pillow over her face. Mrs. Cofer, who had been raped and strangled with a stocking, was believed to be one of the victims of the so-called "Columbus Stocking Strangler." (Resp't Ex. 54 at 3218-19.)

At Petitioner's trial, the State introduced evidence regarding Mrs. Cofer's strangulation death as a similar transaction, allegedly tending to prove Petitioner's guilt with regard to the three murders charged in the Indictment. Petitioner was found guilty and received the death penalty for the three rapes and murders shown in the Indictment.[1] The evidence relating to Mrs. Cofer was introduced by the State solely to show similar mode, method, and motivation.

It was not disclosed to the defense, either prior to trial or at trial, that an exemplar had been made of a bite mark on Mrs. Cofer's left breast. At trial, Dr. Joe Webber, a medical examiner, testified that during the autopsy he observed "what appeared to be tooth marks" on Mrs. Cofer's breast and he consulted "odontology experts." (Resp't Ex. 54 at 3215-17.) Moreover, Dr. Webber testified that the experts determined that a reliable comparison between the bite mark and Petitioner's teeth could not be made because Petitioner had dental work between the time of Mrs. Cofer's murder and the time of his arrest. Dr. Webber never mentioned the existence of a bite mark exemplar.

During the state habeas corpus proceedings, Petitioner first learned that a dentist from the Columbus area, Dr. Carlos Wayne Galbreath, had made an exemplar of the bite mark on Mrs. Cofer's

---

[1] Petitioner was charged with and convicted of raping and murdering three elderly women who resided in Columbus, Georgia: Kathleen Woodruff, Florence Scheible, and Martha Thurmond.

2

breast. Petitioner also learned that prior to his trial, the prosecutors consulted with Dr. Thomas J. David, a forensic odontologist, regarding the bite mark exemplar. (David Aff. May 9, 1994, ¶ 5). Petitioner's counsel at the time interviewed Dr. Galbreath and Dr. David. (Jeff Ertel Decl. July 30, 2003, ¶ 4; Jeff Ertel Supplemental Decl. Feb. 10, 2004).

At Petitioner's state habeas corpus hearing, Petitioner's attorneys questioned both of the prosecutors from Petitioner's trial regarding the whereabouts of the bite mark exemplar. Both testified that they were unaware of the whereabouts of the bite mark exemplar. Petitioner was not able to locate the exemplar while his state habeas corpus action was pending.

While his federal habeas corpus action was pending in this Court, Petitioner learned that the bite mark exemplar might still be in existence. The Court held several hearings regarding the existence and location of the bite mark exemplar. However, the exemplar could not be located.

On September 28, 2004 this Court issued an Order denying Petitioner's Application for Writ of Habeas Corpus. *See Gary v. Schofield,* 336 F. Supp. 2d 1337 (M.D. Ga. 2004). Petitioner filed a Notice of Appeal and a Motion for a Certificate of Appealability ("COA"). The Court granted a COA as to certain issues (including issues regarding the bite mark on Mrs. Cofer's breast) and the case proceeded on appeal to the United States Court of Appeals for the Eleventh Circuit.

While the case was pending on appeal, Petitioner's counsel received a telephone call from Respondent's counsel indicating that the current Muscogee County Coroner, James Dunnavant, had recently

3

located the bite mark exemplar. In light of this development, Petitioner moved the Eleventh Circuit Court of Appeals to remand the case to this Court for further proceedings regarding the bite mark exemplar. On November 23, 2005, the Eleventh Circuit granted Petitioner's Motion to Remand.

During the remand, this Court granted the following motions filed by Petitioner: Motion for Discovery Procedures Regarding Bite Mark Impression and for Funds for Expert Evaluation of the Bite Mark Impression; Motion for Court Order Regarding Use of Georgia Bureau of Investigation Crime Lab Stereo Microscope and Scanning Electron Microscope; and Motion for Access to Petitioner for the Purpose of Taking Impression of Petitioner's Teeth and for Expert Comparison Purposes.

On February 14, 2007, the Court held an evidentiary hearing regarding the bite mark exemplar. At this hearing, Petitioner presented the testimony of seven witnesses. Twelve exhibits were admitted into evidence.

## II. DISCUSSION

A. Scope of Remand Proceedings

Respondent maintains that the Court should not consider evidence regarding the bite mark exemplar that was discovered during post-remand discovery and that was presented at the February 14, 2007 evidentiary hearing. According to Respondent, the Eleventh Circuit's remand order did not "permit the conducting of such wide-ranging discovery, including not only inspection of the bite mark mold, but also testing of the mold and the taking of current bite mark impressions of Petitioner for comparison purposes." (Resp't Br.

4

Following Remand Hr'g on the Cofer Similar Crimes Bite Mark Impression/Exemplar 2.) Respondent's argument misconstrues the remand order from the Court of Appeals.

Petitioner requested that the Eleventh Circuit remand the case to the District Court so that "the parties can create an accurate and complete record and so that the District Court can render its Opinion on such record." (Appellant's Mot. to Remand Based upon the Disc. of the Bite Mark Cast and Mem. of Law in Supp. Thereof 8.) Petitioner explained in his motion that "[an] accurate and complete record would include evidence regarding the disappearance of the bite mark cast, evidence regarding the recent discovery of the bite mark cast, **and the results of a comparison between the bite mark cast and the Appellant's bite impression.**" (Appellant's Mot. to Remand Based upon the Disc. of the Bite Mark Cast and Mem. of Law in Supp. Thereof 8)(emphasis added).) Notwithstanding Respondent's objections, the Eleventh Circuit agreed with Petitioner and granted Petitioner's motion to remand.

Respondent also argues that the Court should not consider the evidence presented during the February 14, 2007 evidentiary hearing because "the granting of an extensive evidentiary hearing was inconsistent with this Court's previous orders denying Petitioner a federal evidentiary [hearing] as to the bite mark mold on any issue before this Court for review." (Resp't Br. Following Remand Hr'g on the Cofer Similar Crimes Bite Mark Impression/Exemplar 3). The contention that this Court previously denied Petitioner an evidentiary hearing regarding the bite mark exemplar is simply incorrect. In fact, this Court has already specifically held that Petitioner was reasonably diligent in his attempts to locate the bite

5

mark exemplar. Moreover, while Petitioner's case was originally pending in this Court, the Court held three evidentiary hearings in an attempt to locate the bite mark exemplar. Had the Court found that Petitioner was not diligent at the state level in his attempts to locate the bite mark exemplar, it would never have held these three evidentiary hearings.[2]

Based on the remand order from the Court of Appeals, this Court finds that it must consider how the evidence that was discovered and presented at the February 14, 2007 hearing affects Petitioner's *Ake v. Oklahoma*, 570 U.S. 68 (1985) claim (Ground Eight in Petitioner's Application for Writ of Habeas Corpus) and his *Brady v. Maryland*, 373 U.S. 83 (1963) claim (Ground Nine in Petitioner's Application for Writ of Habeas Corpus).[3]

---

[2]Prior to the limited remand to this Court, Respondent, in his objection to Petitioner's motion to remand, made the same argument to the Eleventh Circuit regarding Petitioner's alleged lack of diligence in finding the bite mark exemplar. Specifically, Respondent maintained that Petitioner had "failed to establish the need for a federal evidentiary hearing in light of the lack of diligence in seeking to locate the evidence and submitting it to the state habeas corpus court." (Appellee's Resp. in Opp'n to Appellant's Mot. to Remand Based upon the Disc. of the Bite Mark Cast and Mem. of Law in Supp. Thereof 7.) However, the Eleventh Circuit obviously disagreed with this argument because it granted Petitioner's motion to remand.

[3]The Court notes that neither party has raised the issue of exhaustion. Since the bite mark exemplar was not available during the state habeas proceedings, the state habeas court has never had an opportunity to consider that evidence. While remand to the state court is superficially tempting, the last thing this case needs is more delay. It could be the poster child for a broken death penalty litigation system that ensures the protection of a defendant's constitutional rights but does so in a manner that virtually eliminates the certainty of a sentence and causes a lack of confidence in whether justice is ever achieved. In this case, a jury unanimously found Petitioner guilty on August 26, 1986. He was sentenced to death the next day on August 27, 1986. During the following twenty years, Petitioner had his convictions reviewed on at least eleven separate occasions, including twice each by the Georgia Supreme Court and United

6

B.  The Trial Court's Denial of Funds

In Ground Eight of his Petition, Petitioner alleges that he was denied his rights under *Ake* to the assistance of several experts, including a forensic odontologist. Petitioner contends that the deferential standard of review established in the Antiterrorism and Effective Death Penalty Act ("AEDPA") does not apply to this claim because the state courts never had the opportunity to rule upon the undisclosed bite mark exemplar. See *Killian v. Poole*, 282 F.3d 1204 (9th Cir. 2002); *Monroe v. Angelone*, 323 F.3d 286 (4th Cir. 2003); *Rojem v. Gibson*, 245 F.3d 1130 (10th Cir. 2001); and *Williams v. Coyle*, 260 F.3d 684 (6th Cir. 2001). The Court agrees, conducts a *de novo* review, and finds that this claim is without merit.

Initially, the Court notes that the United States Supreme Court has never extended *Ake* to non-psychiatric experts. However, for purposes of this Order, the Court assumes *arguendo* that *Ake* does extend to such experts. *See Conklin v. Schofield*, 366 F.3d 1191, 1206 (11th Cir. 2004); *Grayson v. Thompson*, 257 F.3d 1194, 1231 (11th Cir. 2001). The first inquiry is whether Petitioner "made a timely request to the trial court for the provision of expert assistance." *Conklin*, 366 F.3d at 1206. The record shows that prior to trial Petitioner made a timely request for expert examination of any "tooth impressions or molds . . . procured pursuant to the investigation of these cases." (Resp't Ex. 1 at 42.) Additionally, at trial

---

States Supreme Court. During the pendency of this federal habeas action, the United States has paid Petitioner's attorneys and experts in excess of $231,000.00. To order a remand to the state court for additional (and unnecessary) review would be inexcusable. Notwithstanding a general preference for exhaustion, the Court exercises its discretion, pursuant to 28 U.S.C. § 2254 (b)(2), and denies Petitioner's entire petition, as it did in its September 28, 2004 Order and as it reaffirms in this Order.

7

Petitioner renewed his request for funds for a forensic odontologist after Dr. Joe Webber, a medical examiner for the State of Georgia, testified that during this autopsy of Janet Cofer he observed "what appeared to be tooth marks" on Mrs. Cofer's left breast and he consulted "odontology experts." (Resp't Ex. 54 at 3217, 3234). It is clear that Petitioner made timely requests for an odontology expert.

The next inquiry is "whether it was reasonable for the trial judge to deny [Petitioner's] request." *Conklin*, 366 F.3d at 1206. "In determining the reasonableness of the trial court's refusal to provide independent expert assistance, [the habeas court] consider[s] only the facts available to the trial judge when he made [the] ruling." *Id*. at 1208 (citing *Moore v. Kemp*, 809 F.2d 702, 710-13 (11th Cir. 1987)). Applying this standard, the Court finds that the location of, and recently developed testimony regarding, the bite mark exemplar does not change this Court's September 28, 2004 ruling on Petitioner's *Ake* claim. The Court must determine the trial judge's reasonableness based solely on the facts he knew at the time; not based on what is discovered at a later time.

At the time Petitioner renewed his request for funds for a forensic odontologist, the Prosecution explained that it "didn't have any comparisons to make." (Resp't Ex. 54 at 3234.) The Prosecution also explained that Petitioner had dental work done between the time of Mrs. Cofer's murder and the time of his arrest. Therefore, any comparisons would not be reliable. At the time the trial judge denied Petitioner's request for a forensic odontologist, he simply knew there was a bite mark on Mrs. Cofer's breast, the bite mark was not linked to Petitioner, and the bite mark could not be compared

8

reliably with Petitioner due to intervening dental work. Based upon what the trial judge knew at the time, the Court finds that his conclusions that the teeth marks were not "a critical piece of evidence" and that Petitioner did not need funds for an expert forensic odontologist were not unreasonable. (Resp't Ex. 54 at 3234.) The recently located bite mark exemplar does not change the reasonableness of the trial judge's conclusions at the time he made them. Accordingly, this Court reaffirms its previous ruling that Petitioner is not entitled to habeas corpus relief on this ground.

C. The Alleged Failure to Disclose Exculpatory Evidence

Petitioner maintains that the State violated *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny, by failing to turn over the bite mark exemplar. As with his Ake claim, Petitioner argues that the review standards established by AEDPA do not apply to this *Brady* claim because the state courts never had the opportunity to rule upon the evidence. *Monroe v. Angelone*, 323 F.3d 286, 297 (4th Cir. 2003). This Court agrees that "AEDPA's deference requirement does not apply when a claim made on federal habeas review is premised on *Brady* material that has surfaced for the first time during federal proceedings." *Monroe*, 323 F.3d at 297. Therefore, the Court conducts a *de novo* review.

To establish a violation of *Brady*, Petitioner must show that (1) the prosecution possessed the evidence and failed to disclose it to the defense (irrespective of the good or bad faith of the prosecution); (2) the defense did not possess the evidence and could not reasonably obtain it; (3) the evidence was favorable to the defense (either exculpatory or impeaching); and (4) the evidence was material, i.e., if it had been disclosed to the defense a reasonable probability exists that the outcome of the proceeding would have been

9

different. *See generally Brady v. Maryland*, 373 U.S. 83 (1963); *United States v. Bagley*, 473 U.S. 667 (1985); *Kyles v. Whitley*, 514 U.S. 419 (1995). "'A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.'" *Kelley v. Secy for Dep't of Corrs.*, 377 F.3d 1317, 1354 (11th Cir. 2004)(quoting *Bagley*, 473 U.S. at 682). When determining whether suppressed evidence is sufficiently material to merit relief, the suppressed evidence must be "considered collectively, not item by item." *Kyles*, 514 U.S. at 436-37; *Bagley*, 473 U.S. at 675.

Petitioner has certainly shown that the prosecution possessed the bite mark exemplar and failed to turn it over to the defense. Dr. Carlos Wayne Galbreath testified that Coroner Don Kilgore called him to make an impression of the bite mark on Mrs. Cofer's breast. Dr. Galbreath made a rubber jell impression of the bite mark above the nipple and, after the jell hardened, he made a stone cast exemplar (hereinafter referred to as "bite mark exemplar") from the jell impression.

Dr. Galbreath testified that he gave both the jell impression and the bite mark exemplar to Coroner Kilgore, who later returned the bite mark exemplar to him. Dr. Galbreath testified that at a later time, "somebody from the police department came by and picked [the bite mark exemplar] up." (Evidentiary Hr'g Tr. 30, Feb. 14, 2007.) A Columbus Police Department Supplementary Report shows that Detective R. T. Boren and M. W. Sellers obtained the bite mark exemplar from Dr. Galbreath on July 6, 1984 and traveled with District Attorney Bill Smith and Assistant District Attorney Doug Pullen to Atlanta, Georgia to consult with Thomas J. David, a forensic dentist. Dr. Galbreath indicated that he never saw the bite mark exemplar again. However, the Columbus Police Department

10

Supplementary Report shows that it was returned to Dr. Galbreath for safekeeping in an "undisclosed location." (Hr'g Tr. Pet'r Ex. 3.) Despite Petitioner's attempts to locate the bite mark exemplar, it was not until this case was pending in the United States Court of Appeals for the Eleventh Circuit that current Coroner of Muscogee County, Georgia, James L. Dunnavant, found the bite mark exemplar in the bottom cabinet drawer in his office.

The record clearly establishes that the prosecution possessed the bite mark exemplar and never disclosed it to the Petitioner prior to his trial. It is also clear that Petitioner did "not possess the evidence nor could he obtain it himself with any reasonable diligence." *Baxter v Thomas*, 45 F.3d 1501, 1506 (11th Cir. 1995). Thus Petitioner has satisfied the second step in the *Brady* analysis.

The next issues to be resolved are whether the non-disclosed evidence is favorable and material. The resolution of these issues depends upon an analysis of the bite mark exemplar. Petitioner contends that the exemplar shows bite marks from the upper and lower teeth of Mrs. Cofer's assailant and that those marks do not match Petitioner. Respondent argues that the exemplar shows no evidence of bite marks from anyone's lower teeth and that any upper teeth bite marks cannot be compared reliably with Petitioner's teeth because of his intervening dental work.

There is a conflict as to whether the bite mark exemplar even contains impressions of lower teeth.[4] All of the testimony (both that of Dr. Galbreath and Dr. David) indicated that there were only upper

---

[4] The significance of a finding that the exemplar contains impressions of the lower teeth rests partially upon the fact that Petitioner had no intervening dental work on his lower teeth, as he had on his upper teeth, and thus any comparison of lower teeth would arguably be more reliable than a comparison of upper teeth.

11

teeth marks located above Mrs. Cofer's left nipple. Dr. Galbreath, the dentist who actually created the jell impression and resulting bite mark exemplar, is the only individual who has any personal, direct knowledge of the bite mark exemplar and how it was created. He testified repeatedly that he was certain he did not, when creating the jell impression, either intentionally or inadvertently, include any area under Mrs. Cofer's nipple. According to Dr. Galbreath, he is certain that he only took an impression of the area above the nipple; not the nipple itself and not any area below the nipple. Dr. Galbreath testified unequivocally that the jell impression and resulting bite mark exemplar contains impression of only two upper teeth.

Conversely, Petitioner's expert, Dr. Thomas J. David, testified that when he recently used a stereo microscope to evaluate the bite mark exemplar, lower teeth marks were also revealed. Dr. David testified that, "to a reasonable degree of scientific certainty," the bite mark exemplar contains impressions of both upper and lower teeth. (Hr'g Tr. 81, 85.) Therefore, contrary to the testimony of the individual who actually created the bite mark exemplar, Dr. David opined that Dr. Galbreath took one jell impression of both the areas above and below Ms. Cofer's nipple.[5]  Interestingly, although

---

[5] In his May 9, 1994 Affidavit, Dr. David stated that when he met with individuals from the District Attorney's Office (which meeting is referenced in the Columbus Police Department Supplementary Report dated July 9, 1984), he told them that the jell impression showed marks from lower teeth, which were crowded and unevenly aligned. At the time of the February 14, 2007 federal evidentiary hearing, Dr. David could not "remember what [the jell impression] looked like." (Hr'g Tr. 104.) However, he did remember telling the individuals that "it looked as though the person's lower teeth were crowded or crooked." (Hr'g Tr. 104.) This is in direct conflict with the testimony of Dr. Galbreath, the individual who actually created the jell impression. Dr. Galbreath, as explained above, testified that he made a jell impression of two upper teeth marks only.

12

Dr. David testified that Dr. Galbreath must have taken one impression that included the area above and below the nipple, Dr. David could not state with a reasonable degree of certainty that any evidence of a nipple could be identified in the bite mark exemplar—even with the stereo microscope.

Dr. David compared what he opined to be the lower teeth on the bite mark exemplar with those contained on a bite mark exemplar that he recently made of Petitioner's teeth. Based upon this comparison, Dr. David testified that he thought it "improbable" that Petitioner made the lower teeth mark. (Hr'g Tr. 74-75, 98, 102-103). However, Dr. David stated that he could not "exclude" Petitioner as the person whose lower teeth marks allegedly appear on the bite mark exemplar. (Hr'g Tr. 103.) The Court notes that based upon its examination of the exemplar and its consideration of the testimony during the evidentiary hearing, it was unpersuaded that lower teeth marks existed on the bite mark exemplar taken from Mrs. Cofer's breast.

Both Dr. David and Dr. Galbreath agree that the bite mark exemplar contains impressions of upper teeth, that there is a gap between the two upper front teeth, and that one of the teeth is rotated. However, all parties agree that there is evidence of intervening dental work on Petitioner's upper teeth. Evidence, in the form of a Supplementary Report of the Columbus Police Department dated May 7, 1984, shows that between the time of Mrs. Cofer's murder in 1978 and Petitioner's arrest in 1984, a dentist in South Carolina, Dr. Paul Hahn, placed a crown on one of Petitioner's upper front teeth. Moreover, Dr. Hahn stated that Petitioner "had apparently had a crown there previously, that was now missing, due to the fact that the tooth was filed to a point." (Hr'g Tr. Ex. 4.) In relation to Petitioner's other upper front tooth, Dr. Hahn explained the tooth

13

was false and "could be taken in or out by [Petitioner] whenever he wished." (Hr'g Tr. Ex. 4.) The Supplementary Police Report of the Columbus Police Department shows that Dr. Hahn "could not remember if one of [Petitioner's] teeth . . . was turned out of alignment." (Hr'g Tr. Ex. 4.)

At the state habeas corpus evidentiary hearing, the Prosecutor testified that after the State learned that Petitioner had dental work performed on his upper teeth, they "made a decision not to seek an order to make an impression of his teeth to have compared." (Resp't Ex. 145 at 282.) This certainly seems to be a reasonable decision. The Prosecution knew that the bite mark exemplar contained impressions of two gapped upper teeth, one of which was turned out or rotated. Due to the intervening dental work, however, it was reasonable to conclude that there was no way to compare that exemplar with Petitioner's upper teeth. No evidence exists that the Prosecutors, pre-trial or at the time of trial, had any knowledge regarding whether Petitioner had a gap and rotation in his upper teeth in April 1978, the time of Mrs. Cofer's murder.

Although Dr. David admits that "we're not comparing upper teeth at all," he testified that if there was credible evidence that Petitioner did not have a gap in his upper front teeth, he would be excluded as the person who bit Mrs. Cofer's left breast. (Hr'g Tr. 103, 109.) At the evidentiary hearing before this Court, Petitioner presented testimony from four lay witnesses, all of whom stated they knew Petitioner in the mid-1970's and that he did not have a noticeable gap in his upper front teeth. However, none of these witnesses were so familiar with Petitioner that they knew he had a false front tooth. Moreover, this testimony does not establish whether there was, or was not, a gap in Petitioner's front teeth on

14

April 19-20, 1978, the date of Mrs. Cofer's murder. Evidence shows that Petitioner had a substantial amount of dental work performed on his upper front teeth; e.g., one tooth was false, and the other tooth was capped at least twice as is shown by the May 7, 1984 Supplementary Report of the Columbus Police Department. Determining what Petitioner's teeth looked like before or between the times of the various dental procedures requires speculation.[6]

Even assuming that the bite mark cast is favorable to Petitioner, the Court finds that, when considering it collectively with the other undisclosed evidence, it does not reasonably "'put the whole case in such a different light to undermine confidence in the verdict.'" *Strickler v. Greene*, 527 U.S. 263, 290 (1999)(quoting *Kyles*, 514 U.S. at 435). In the Order dated September 4, 2004, this Court held that the State did not violate *Brady* when it failed to disclose the following: 1) police reports in which Gertrude Miller makes inconsistent statements; (2) police reports relating to other suspects; (3) a police report that mentions a bite mark cast made from Janet Cofer's left breast; (4) police reports showing Petitioner's alleged physical inability to commit the crimes for which he was convicted; and (5) Georgia Bureau of Investigation ("GBI") worksheets relating to serological evidence. Now, the Court determines that, considering all of the undisclosed evidence collectively (including the bite mark exemplar), the State did not violate *Brady* because the combined effect of this evidence does not

---

[6]Additionally, one of the lay witnesses testified that Petitioner, during the mid-1970's, "had this thing about putting these gold inserts" on his teeth. (Hr'g Tr. 145.) Considering this, along with the report that Plaintiff had one front tooth filed down at some point in the past, it would require guesswork to attempt to compare Petitioner's top front teeth as they appeared on April 19-20, 1978 with the exemplar from Mrs. Cofer's breast.

15

undermine confidence in the verdict and sentence determined by the jury.

As the Court explained in *Strickler*, a petitioner must show more than a "reasonable *possibility*" that the results of the trial (either guilt or sentencing) may have been different if the undisclosed evidence had been given to a petitioner. *Id*. at 291 (emphasis in original). A petitioner bears the burden of "establish[ing] a reasonable *probability* of a different result." *Id*. (emphasis in original). Petitioner has not met that burden in this case. This is especially true in light of the fact that Petitioner's expert's recent opinion regarding lower teeth marks conflicts with the factual testimony of the person who actually created the bite mark exemplar. Moreover, Petitioner's expert states that, even based on what he believes to be lower teeth marks, he cannot exclude Petitioner as the person who bit Mrs. Cofer. Additionally, Petitioner's intervening dental work makes any conclusion regarding the similarity of Petitioner's upper teeth with those shown on the bite mark exemplar completely speculative. Moreover, while Petitioner points to the "significance of the undisclosed [GBI] work papers regarding the semen evidence," the Court previously found in its September 14, 2004 Order that this evidence (as well as the other undisclosed evidence) was inconclusive. Simply stated, the bite mark exemplar and the other undisclosed evidence are not so strong that they "undermine confidence in the verdict" in this case. *Stickler,* 527 U.S. at 290.

Finally, the Court observes that there was additional probative evidence admitted at trial linking Petitioner to the crimes in this case. Specifically, Petitioner confessed that he was present at, or had knowledge of, eight of the nine 1977-78 rapes and murders at

issue in this case.[7]  Importantly, Petitioner confessed that he was present at and burglarized Mrs. Cofer's home.  Although he tried to blame the rapes and murders on another individual (Malvin A. Crittenden), the authorities found no corroborating evidence that linked Mr. Crittenden to the crimes.  While the blood and hair evidence was inconclusive, Petitioner's fingerprints were ultimately found to match the latent prints found at four of the crime scenes.  Moreover, an investigation into Petitioner's background revealed his connection to two very similar crimes in the past.

Based on the foregoing, the Court reaffirms its September 28, 2004 Order[8] and denies Petitioner's Application for Writ of Habeas Corpus.

IT IS SO ORDERED, this 30th day of May, 2007.

S/Clay D. Land
CLAY D. LAND
UNITED STATES DISTRICT JUDGE

---

[7]The nine victims were Florence Schieble, Martha Thurmond, Kathleen Woodruff, Gertrude Miller, Mary "Fern" Jackson, Jean Dimenstein, Ruth Schwob, Mildred Borom, and Janet Cofer.

[8]*See Gary v. Schofield,* 336 F.Supp.2d 1337 (M.D. Ga. 2004).