IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

CARLTON GARY,                          *

      Petitioner,            *

vs.                                    *    CASE NO. 4:97-CV-181 (CDL)

CARL HUMPHREY, Warden,                 *

      Respondent.            *


O R D E R

Petitioner, a State of Georgia prisoner convicted of capital murder, awaits the execution of his death sentence, which has temporarily been stayed by the Georgia Supreme Court. Having fully exhausted his state and federal habeas corpus rights and having been denied clemency by the Georgia State Board of Pardons and Paroles, Petitioner is presently pursuing an extraordinary motion for new trial in state court based upon deoxyribonucleic acid (DNA) test results that he claims cast doubt upon his guilt. The issue presented by Petitioner's Motion for Reconsideration (ECF No. 214) presently pending in this Court is whether Petitioner is entitled to *federally* funded counsel to pursue his extraordinary motion for new trial. For the following reasons, the Court finds that he is not. Therefore, his Motion for Reconsideration is denied.

BACKGROUND

The original scope of representation authorized by the Court's appointment of Petitioner's counsel is clearly described in counsel's first Motion for Appointment of Counsel, which was filed more than thirteen years ago.  In that motion, counsel sought to be appointed to represent Petitioner "in the preparation and filing of a [federal] habeas corpus petition [pursuant to 28 U.S.C. § 2254], and in subsequent habeas corpus proceedings in this Court."  (October 30, 1997 Motion for Appointment of Counsel). The Court granted that motion, and counsel represented Petitioner in all proceedings in this action through its completion on December 14, 2009, when the United States Supreme Court denied Petitioner's petition for writ of certiorari that sought review of the Eleventh Circuit Court of Appeals' decision affirming this Court's denial of Petitioner's petition for habeas corpus relief.  After the Supreme Court denied certiorari, Petitioner sought clemency from the Georgia State Board of Pardons and Paroles under Georgia law, and counsel for Petitioner requested compensation for services rendered in connection with the subsequent state clemency proceedings.  *See* Counsel's December 30, 2009 Letter (ECF No. 198).  Pursuant to 18 U.S.C. § 3599(e), as interpreted by the Supreme Court in *Harbison v. Bell,* 129 S. Ct. 1481 (2009), this Court approved compensation of Petitioner's counsel for the representation of Petitioner in state clemency proceedings.

The Georgia Board of Pardons and Paroles denied Petitioner clemency. After that denial, Petitioner filed a motion in the state trial court under Georgia law, O.C.G.A. § 5-5-41, for DNA testing. The Georgia Supreme Court stayed Petitioner's execution until that motion could be ruled upon. The state trial court granted the motion and allowed DNA testing of certain evidence. This Court approved the compensation of Petitioner's counsel and of a DNA expert related to obtaining the order for DNA testing and interpreting the results. The Court concluded that such testing may be relevant to a state clemency proceeding.

Based upon the DNA test results, counsel for Petitioner is now pursuing a second state clemency hearing simultaneously with an extraordinary motion for new trial in state court. Petitioner's counsel has submitted vouchers for services related to the state clemency proceedings and the extraordinary motion for new trial. The Court approved compensation for services rendered in connection with the clemency proceedings but denied compensation for services related solely to the extraordinary motion for new trial. (Order, December 10, 2010, ECF No. 212). The Court concluded that Petitioner is not entitled to federally funded counsel for state court proceedings after the final conclusion of the federal habeas corpus proceeding, except for clemency proceedings. *Id.* Petitioner, relying upon the United States Supreme Court's recent decision in

*Harbison*, seeks reconsideration of the Court's ruling that denied compensation.

DISCUSSION

A.   18 U.S.C. § 3599 and *Harbison* v. *Bell*

Preliminarily, it is important to note that a state prisoner has no federal *constitutional* right to *federally* funded counsel to pursue habeas corpus relief.[1]   Notwithstanding the absence of a constitutional right, Congress has mandated by statute that federally funded counsel shall be appointed to represent state prisoners who seek habeas corpus relief in federal court pursuant to 28 U.S.C. § 2254 to vacate and/or modify their death sentence. 18 U.S.C. § 3599.   Regrettably, the statutory language upon which this right is based is not a model of clarity.   The confusion arises from the statute's attempt to describe the scope of federally funded representation in three separate contexts without adequately distinguishing the extent of responsibility for each separate and distinct type of representation.   The statute authorizes federally

_____

[1]Although the United States Supreme Court has never squarely addressed the issue of whether a federal constitutional right exists to counsel in a federal habeas corpus proceeding, the Court has clearly held that no constitutional right to an attorney exists in *state* post-conviction proceedings.   *See Coleman v. Thompson,* 501 U.S. 722, 753 (1991)(*citing Murray* v. *Giarratano,* 492 U.S. 1 (1989) and *Pennsylvania* v. *Finley,* 481 U.S. 551 (1987)).   The Court finds that this same rationale would likely apply to federal habeas proceedings.   *See Johnson* v. *Avery,* 393 U.S. 483, 488 (1968)(stating in dicta, "[i]t has not been held that there is any general obligation of the courts, state or federal, to appoint counsel for prisoners who indicate, without more, that they wish to seek post-conviction relief"); *see also Hooks* v. *Wainwright,* 775 F.2d 1433, 1438 (11th Cir. 1985).

funded counsel for (1) a federal defendant who is being tried for a federal capital crime in federal court; (2) a federal prisoner who was convicted of a federal capital crime in federal court and is seeking federal habeas corpus relief in federal court pursuant to 28 U.S.C. § 2255; and (3) a state prisoner who was convicted of a state capital offense in a state court and who has exhausted his state habeas corpus rights and seeks federal habeas corpus relief in federal court pursuant to 28 U.S.C. § 2254. *Harbison*, 129 S. Ct. at 1486 (explaining that 18 U.S.C. 3599 (a)(1) "describes federal capital defendants" and (a)(2) describes both § 2254 and § 2255 habeas corpus litigants). Although it is clear that federally funded representation is available in each of these situations, the somewhat muddled language of the statute describing the scope of that representation creates the statutory construction conundrum presently facing the Court: the extent of a state prisoner's statutory right to federally funded counsel for proceedings that occur after his federal habeas action has been finally completed.[2]

---

[2] The Court finds that it does have jurisdiction to decide this issue, even though the § 2254 proceeding upon which this Court's jurisdiction was originally predicated has been finally terminated. 18 U.S.C. § 3599, as interpreted by the Supreme Court in *Harbison,* contemplates that a district court retains jurisdiction to decide issues related to the continued authorization of federally appointed counsel for state prisoners who have been denied federal habeas corpus relief but who subsequently pursue state clemency relief. The Court further finds that counsel has sufficiently invoked this Court's limited jurisdiction to decide these compensation related issues. *See* Counsel's December 30, 2009 Letter (ECF No. 198).

In *Harbison*, the Supreme Court made it clear that a state prisoner who has previously been provided with federally funded counsel to pursue his habeas corpus rights in federal court shall also be entitled to continued federally funded representation by that counsel in subsequent state clemency proceedings. *Harbison*, 129 S. Ct. at 1491. Counsel for Petitioner seizes upon this holding and portions of the Supreme Court's rationale to argue that state prisoners who have previously been provided with federally funded counsel are entitled to continued representation by that counsel for all state proceedings after the final denial of federal habeas relief. Acceptance of this argument would have broad and significant ramifications. It would mean that Congress intended that once federally funded counsel is appointed to represent a state prisoner in a federal habeas corpus action, then that counsel shall continue to represent the state prisoner until the prisoner obtains the relief he seeks or is executed, even if that relief is sought in a separate and sovereign state court with no connection to the federal habeas action for which counsel was originally appointed.[3] The Court finds that Petitioner's argument extends *Harbison* beyond its narrow holding and misreads Congress's intent when it decided to provide state

_____

[3]The present motion does not involve the issue of whether federally appointed counsel shall continue to represent a state prisoner in state court proceedings upon remand of the action to the state court before a final decision is made in federal court on the federal petition for habeas corpus relief. Therefore, the Court does not address this issue.

6

prisoners with federally funded counsel in federal habeas corpus actions.

B.   Interpreting *Harbison* v. *Bell* Beyond "Clemency"

The precise holding in *Harbison* is that "§ 3599 authorizes federally appointed counsel to represent their clients in state clemency proceedings and entitles them to compensation for that representation." *Harbison*, 129 S. Ct. at 1491. The Supreme Court's holding did not address whether the statute authorizes federally appointed counsel to represent clients in subsequent state court proceedings other than clemency proceedings. To resolve this issue, the Court must look to the statute.

"[S]ubsection (a)(2) [of § 3599] triggers the appointment of counsel for habeas petitioners, and subsection (e) governs the scope of appointed counsel's duties." *Harbison,* 129 S. Ct. at 1486. Subsection (a)(2) states:

> In any post conviction proceeding under section 2254 . . . of title 28, United States Code, seeking to vacate or set aside a death sentence, any Defendant who is or becomes financially unable to obtain adequate representation or investigative, expert, or other reasonably necessary services shall be entitled to the appointment of one or more attorneys and the furnishing of such other services in accordance with subsections (b) through (f).

It is undisputed that Petitioner qualified for appointment of counsel to represent him in his federal habeas proceeding and that counsel

was appointed and compensated during the pendency of Petitioner's § 2254 proceeding.

To determine the scope of that federally appointed representation, the Court must interpret subsection (e) of the statute. That subsection describes the scope of counsel's responsibilities:

> Unless replaced by similarly qualified counsel upon the attorney's own motion or upon motion of the defendant, each attorney so appointed shall represent the defendant throughout every subsequent stage of available judicial proceedings, including pretrial proceedings, trial, sentencing, motions for new trial, appeals, applications for writ of certiorari to the Supreme Court of the United States, and all available post-conviction process, together with applications for stays of execution and other appropriate motions and procedures, and shall also represent defendant in such competency proceedings and proceedings for executive or other clemency as may be available to the defendant.

As alluded to previously, this subsection attempts to combine in one somewhat convoluted sentence the responsibilities of federally appointed counsel for all of the different situations for which the appointment of counsel is authorized in federal court (i.e., trial and direct appeal, § 2255 relief, and § 2254 relief). Applying this subsection to the present case, where counsel was originally appointed to represent Petitioner in his § 2254 action, the Court must determine the meaning of the phrase "every subsequent stage of available judicial proceedings including . . . all available post-conviction process." As previously explained, the Supreme Court in

*Harbison* interpreted that phrase to include "state clemency proceedings." The Court finds it significant that the statutory language refers specifically to "clemency" proceedings. Therefore, the issue for the Supreme Court in *Harbison* was whether the unmodified term "clemency" was limited to *federal* clemency proceedings or also included *state* clemency proceedings. Tying the previous phrase "every subsequent stage of available judicial proceedings" to the specifically stated term "clemency," the Supreme Court held that the statute authorized the continued federally funded representation of state prisoners in state clemency proceedings.

Petitioner's argument extending *Harbison* to authorize federally funded counsel for *all subsequent proceedings* relies upon a literal interpretation of the general phrase "every subsequent stage of available judicial proceeding . . . including all available post-conviction process." This argument interprets the phrase in isolation, disconnected from any specific type of subsequent proceeding, and without regard to the context of the appointment (i.e., original federal action, § 2254, or § 2255). When that phrase is read in context with the rest of the statute and the nature of the action for which the appointment was made, the Court finds that it is not reasonable to conclude from the statutory language that Congress intended to mandate federally appointed counsel for state prisoners who pursue any type of "available judicial proceeding" in state court

*after* they have fully exhausted their state direct appeal and state habeas rights **and** *after* they have fully exhausted their federal habeas rights and lost. The Court interprets that phrase in the statute to mean that appointed counsel shall continue to represent a state prisoner "throughout every subsequent stage of available judicial proceedings" related to the federal action for which counsel was originally appointed. For example, in the § 2254 context, federally appointed counsel shall represent a state prisoner in all proceedings before the district judge, as well as any subsequent appeal to the Circuit Court of Appeals and any application for a writ of certiorari to the U.S. Supreme Court. This representation would also include any motions for stay made *during the pendency* of the federal habeas action.

The Court rejects Petitioner's argument that *Harbison* supports the conclusion that this general phrase, standing alone, was intended to provide *carte blanche* authority for federally funded counsel to represent a state prisoner in *any and all* state proceedings initiated after all of the federal proceedings had been completed. The holding in *Harbison* was buttressed by the Supreme Court's connection of this general phrase to the separate and specific reference to clemency proceedings in the statute. The Supreme Court therefore concluded that Congress did intend that federally funded counsel's responsibilities should be narrowly expanded to include clemency,

which is typically the final step in the process after which no subsequent judicial proceedings are generally available. If Congress had intended for federally funded counsel to represent a state prisoner in *literally all* available subsequent post conviction *state* legal proceedings, it would have been unnecessary to include the last clause of subsection (e), which expressly provides that counsel "shall also represent the defendant in . . . proceedings for executive or other clemency as may be available to the defendant." 18 U.S.C. § 3599(e). By adding that clause, it is plausible, as the Supreme Court found, that Congress evinced its intent that, in addition to the federal habeas proceedings, a state prisoner would also be entitled to federally funded representation in that final state proceeding, clemency.

One last aspect of *Harbison* needs to be addressed. Petitioner relies upon the Supreme Court's statement: "It is the sequential organization of the statute and the term 'subsequent' that circumscribes counsel's representation, not a strict division between federal and state proceedings." *Harbison*, 129 S. Ct. at 1487. Petitioner thus suggests that it is irrelevant whether the subsequent state proceeding occurs after the federal habeas proceeding has been completed. According to Petitioner, the relevant point is when representation began, and *everything* after that point is "subsequent" and therefore authorized by the original appointment because it

sequentially follows the appointment. If "sequentiality" is all that matters, then the only circumscription on counsel's authorized appointed representation is obtaining the relief sought or execution, which is no circumscription at all. It is not plausible that Congress intended such open-ended federally funded representation.

While the fact that a subsequent state proceeding occurs after the termination of the federal habeas action may not be dispositive, it is certainly relevant. The Supreme Court recognized the absurdity of a pure "sequentiality" justification for its holding. It expressly acknowledged that not all state court proceedings subsequent to the appointment of federal habeas counsel would qualify for federally funded representation. For example, federally funded counsel would not be available after post conviction relief is granted. Any state proceeding after relief is granted, such as a new trial, would be considered the "commencement of new judicial proceedings," not a "subsequent stage" of the federal habeas proceedings. *Id.* at 1488. The Supreme Court also acknowledged that a state habeas proceeding that occurs after the federal habeas proceeding would not be a stage "subsequent" to federal habeas, and, therefore, a state prisoner would not be entitled to federally funded representation for those proceedings. *Id.* at 1488-89.

A careful reading of the Supreme Court's decision in *Harbison* reveals that the Supreme Court's "sequential" analysis of 18 U.S.C.

12

§ 3599 includes the above limitations. Those limitations are not readily apparent from a purely literal reading of the language of the statute, but they are easily understood in the context of the entire statute and the nature of federal habeas proceedings. A subsequent new trial or new state habeas proceeding may be "sequentially" after a federal habeas proceeding, but they are both qualitatively disconnected from such federal proceeding. A final state clemency proceeding, on the other hand, can be more closely linked qualitatively to the federal habeas petition as the final "fail safe" in our criminal justice system. *Id.* at 1489. It is entirely plausible that Congress intended to authorize federally funded counsel to represent condemned state prisoners during this last step in the process.

This Court finds that an extraordinary motion for new trial is qualitatively closer to a state retrial and a new state habeas petition than to a final clemency proceeding. It seeks the same relief from a state court that would be sought in a new state habeas petition. Rather than the last step in a federal habeas proceeding, it is the first step in a new state proceeding. It is not plausible that Congress intended to authorize federally funded counsel to represent state prisoners during these new state judicial proceedings.

## C.   Pre-*Harbison* Eleventh Circuit Authority

The Court observes that the issue presented in the pending motion is one of first impression in the post-*Harbison* era.   The Court has located no cases decided after *Harbison* addressing this issue in this Circuit—or any other Circuit, for that matter. Furthermore, since much of the pre-*Harbison* precedent has been overruled by *Harbison*, that precedent has limited application. Notwithstanding this dearth of binding Circuit precedent, the Court submits that the measured approach taken by the Eleventh Circuit in *pre-Harbison* precedent should not be ignored completely.   It provides valuable insight when deciding whether to extend *Harbison* beyond its narrow holding and to give it the expansive interpretation sought by Petitioner.   In *King v. Moore,* 312 F.3d 1365 (11th Cir. 2002), the Eleventh Circuit ruled that federally funded counsel was not available for a state prisoner's state clemency proceeding.   This ruling has obviously been overruled by *Harbison*; however, the fact that the holding has been rejected does not mean that the entire rationale is unpersuasive when applied to the issue presented in the present motion, which issue was not presented in *Harbison.*   As explained by the Eleventh Circuit:

> Before we would decide to obligate the United States to pay for counsel in a state proceeding, Congress's intent to pay would need to be so clear as to leave room for no other reasonable interpretation.   The drain on the federal treasury would likely be more than considerable, and the

> entanglement of federal courts in state proceedings would
> raise substantial problems impacting our federalism.
> Examining the pertinent statute, we believe that Congress's
> intent to pay for counsel in state proceedings is by no
> means clear.

*Id.* at 1367. Although *King* is no longer good law to the extent that

it applies to state clemency proceedings, the cautious approach

advocated by the Eleventh Circuit when evaluating whether the federal

government must fund a state inmate's state legal proceedings

displays great wisdom. *See also In Re Lindsey*, 875 F.2d 1502 (11th

Cir. 1989) (denying federally appointed counsel for pursuit of

collateral state remedies in state court).[4]

    D.   <u>Summary of Court's Interpretation of 18 U.S.C. § 3599</u>

In summary, the Court interprets 18 U.S.C. § 3599(e) to

authorize federally funded counsel who are appointed to represent a

state prisoner in a § 2254 proceeding to continue to represent that

prisoner throughout all available *federal* habeas proceedings *and* in

state clemency proceedings.[5] When the statutory authorization is read

---

[4]Although the rationale expressed by the Eleventh Circuit in *Lindsey* may be partly inconsistent with the Supreme Court holding in *Harbison,* the actual holding is not. *Lindsey* did not involve clemency proceedings. Moreover, just as the Eleventh Circuit held in *Lindsey,* the Supreme Court in *Harbison* recognized that federal funding of counsel for new collateral state habeas corpus proceedings is not available. *Harbison*, 129 S. Ct. at 1488-89. Therefore, a reasonable argument can be made that *Lindsey* is still binding precedent insofar as it applies to subsequent state court proceedings that do not involve clemency.

[5]This would include representation of the state prisoner in any state proceeding seeking a stay of execution while the federal habeas action is pending. *See Harbison,* 129 S. Ct. at 1487 n.6. However, once the federal habeas action has been terminated, the rationale for continued federally

in context, no reasonable interpretation can justify finding that Congress intended to federally fund all subsequent state court proceedings, particularly given that the entire justification for providing counsel in the first place was to pursue the federal § 2254 habeas proceeding. When that mission is completed, the job is done, except for the limited exception of a state clemency proceeding. Therefore, unless Petitioner's extraordinary motion for new trial can be fairly described as a type of clemency proceeding, Petitioner is not entitled to federally funded counsel to pursue that motion.

E. Extraordinary Motion for New Trial Is Not Clemency

The Court finds that Petitioner's contemplated extraordinary motion for new trial pursuant to O.C.G.A. § 5-5-41 based upon DNA results is clearly not a type of clemency proceeding contemplated by subsection (e) of § 3599. Georgia law vests the executive clemency power in the Georgia State Board of Pardons and Paroles. Ga. Const., art. IV, § 2, para. 1.; *see also* O.C.G.A. § 42-9-42. Because the State of Georgia confers upon the Board of Pardons and Paroles the unfettered discretion to grant clemency, no rights are conferred upon someone seeking clemency other than the right to seek it. *Smith v. Snow,* 722 F.2d 630, 631-632 (11th Cir. 1983)(citing *Connecticut Bd. of Pardons* v. *Dumschat,* 452 U.S. 458 (1981)). "The discretion

funded representation of a state prisoner in a state proceeding ceases to exist.

16

involved at the clemency stage . . . serves only as an act of grace to relieve that sentence even when the sentence has been legally imposed." *Id.* at 632.

On the other hand, an extraordinary motion for new trial is directed to a judicial officer who does not have unfettered discretion. *See Williams v. Georgia*, 349 U.S. 375, 384 (1955) (explaining that while the "granting or denying of an extraordinary motion for new trial rests primarily in the discretion of the trial court," . . . the Georgia appellate court have not hesitated to reverse and grant a new trial in exceptional cases"). It is a judicial proceeding that permits under certain extraordinary circumstances the filing of a new trial motion later than the rules normally require it to be filed. The granting of such a motion based upon DNA evidence would presumably be based upon established legal standards for the granting of any motion for new trial that relies upon the subsequent discovery of exculpatory evidence. *See Dick v. State*, 248 Ga. 898, 900-901 (1982) (stating that there are six requirements that must be met before the trial court can grant an extraordinary motion for a new trial based on newly discovered evidence). An extraordinary motion for new trial is not decided by the judge based solely on his unfettered discretion and graciousness.

Such a proceeding bears no legal resemblance to clemency.[6]  For this reason, the Court rejects any suggestion that federally funded counsel should be provided to pursue the extraordinary motion for new trial because it is analogous to a clemency proceeding.

F.    Future Guidance

Since some of counsel's efforts related to a second clemency hearing may overlap with efforts related to a motion for new trial, the Court finds it prudent to provide counsel with additional guidance to avoid future misunderstandings.  The Court is not convinced that providing counsel to pursue DNA testing subsequent to the final dismissal of a federal habeas petition, even if it is to be used in support of clemency relief, is mandated by 18 U.S.C. § 3599.  Nevertheless, the Court in its discretion has approved compensation to counsel and his expert for proceedings in the trial court designed to obtain DNA testing, the results of which may be relevant in a second clemency hearing.  The Court understands that in light of these initial results, counsel for Petitioner is involved in

---

[6]The Court notes that Petitioner here actually seeks a *second* clemency hearing to present DNA evidence that was not available at his first clemency hearing.  Whether he is even provided a second clemency hearing is left entirely to the unfettered discretion of the State Board of Pardons and Paroles.  *See McLendon v. Everett,* 205 Ga. 713, 718 (1949).  Although the Court has authorized federally funded counsel and expert assistance for a possible second clemency hearing pursuant to *Harbison*, it is not clear that such authorization is mandated by 18 U.S.C. § 3599.  It is beyond doubt, however, that a second clemency hearing and an extraordinary motion for new trial share few, if any, common characteristics, a point made exceedingly clear by Petitioner's counsel at oral argument on the pending motion.

supplemental proceedings in the trial court to determine whether additional testing should be conducted. The Court in its discretion finds that counsel shall be compensated for these supplemental proceedings in the trial court that relate to whether and to what extent additional testing should be permitted. However, the Court advises counsel that any appeal of any of the trial court's orders related to DNA testing shall not be federally funded, even if counsel represents that the DNA test results are necessary for the second clemency hearing. The rationale for this limitation is as follows. Petitioner's right to continued federally funded counsel extends solely to a second clemency hearing. That right does not include a legal right to DNA testing to be used to support a clemency petition. The right to DNA testing is a limited right under Georgia law connected to the possible use of such DNA results in a state proceeding in support of an extraordinary motion for new trial pursuant to O.C.G.A. § 5-5-41. Therefore, any appeal of the trial court's orders regarding the extent of DNA testing would rest legally upon the potential use of those results in a future extraordinary motion for new trial, and as previously explained in this Order, Petitioner is not entitled to federally funded counsel for those proceedings. While the results may also be used in a second clemency hearing, there is no statutory right to obtain those results for use in a clemency hearing, nor is there any statutory right to use them

once they are obtained. The fact that they may be available for such future use in the clemency hearing is completely fortuitous. Accordingly, the Court will not approve federally funded counsel to pursue an extraordinary motion for new trial, any appeals in the state system relating to the state trial court's rulings on an extraordinary motion for new trial, or an appeal of any rulings relating to the extent of permissible DNA testing.

For the sake of thoroughness, the Court finds it appropriate to provide counsel with additional guidance regarding federal compensation for expert witnesses in support of a second clemency hearing. No federal compensation shall be forthcoming for any expert testimony given in relation to Petitioner's Extraordinary Motion for a New Trial. Moreover, any compensation for expert witnesses in support of a second clemency hearing, beyond the amount that has previously been approved, shall be submitted to the Court in advance for approval.[7]

---

[7]Finally, counsel is advised that simply because the Court may have approved certain payments in the past does not mean that it will approve similar payments in the future. If the service is inconsistent with today's Order, the Court will not approve payment. For example, it appears that the Court may have previously approved payment of a voucher that included time spent on a new state habeas corpus petition. The Court did so with strong reservations and because, based on the CJA voucher submitted, it was unable to parse out what was related to the new state habeas and what was related to the clemency proceedings. Consistent with today's Order, the Court notifies counsel that no future CJA-30 or CJA-31 vouchers will be approved that include services or expenses relating to any state habeas proceedings.

CONCLUSION

Based on the foregoing, Petitioner's Motion for Reconsideration (ECF No. 214) is denied. The Court in its discretion will approve payment for services rendered in connection with a second clemency hearing based upon the DNA results that were obtained after the first clemency hearing; however, no payment shall be made for services rendered in connection with any other subsequent state judicial proceedings, including an extraordinary motion for new trial under Georgia law.

The Court makes one final observation. The Court by its ruling today does not suggest that indigent state prisoners seeking state remedies subsequent to the denial of federal habeas corpus relief should not be provided with the assistance of counsel to facilitate a full and fair hearing of their claims in state court; nor does the Court suggest that Congress could not, if it chose, fund lawyers to assist state prisoners in the pursuit of state remedies. *See* *Lindsey,* 875 F.2d at 1508-09. The Court holds only that the language of 18 U.S.C. § 3599 does not evince an intent to provide such funding for state court remedies beyond state clemency proceedings, particularly when the federal habeas corpus action has been finally terminated.[8]

---

[8] As previously noted, this Order does not address the propriety of authorizing federally funded counsel for state proceedings subsequent to a remand and *before* the federal habeas action has been finally terminated.

IT IS SO ORDERED, this 21st day of January, 2011.


                                    S/Clay D. Land
                                      CLAY D. LAND
                                 UNITED STATES DISTRICT JUDGE